IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GAMAL JOHNSON, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 01-CV-3418 |
| | : | |
| AGENT KNORR, et al., | : | |
| Defendants. | : | |

## MEMORANDUM

### I.      Standard for Reconsideration

A motion for reconsideration in the United States District Court for the Eastern District of

Pennsylvania is filed pursuant to Local Civil Rule 7.1(g) and Fed. R. Civ. P.59(e).   A motion for

reconsideration is meritorious if there is: (i) new evidence not previously available; (ii) an

intervening change in controlling law; or (iii) a need to correct a clear error of law or to prevent a

manifest injustice.   See General Instrument Corp of Delaware. v. Nu-Tek Elecs. & Mfg., Inc., 3

F. Supp. 2d 602, 606 (E.D. Pa. 1998), aff'd. by, 197 F.3d 83 (3d Cir. 1999); see also Evans v.

United States, 173 F. Supp. 2d 334, 335 (E.D. Pa. 2001); Environ Prods., Inc. v. Total

Containment, Inc., 951 F. Supp. 57, 62 n.* (E.D. Pa. 1996); Cohen v. Austin, 869 F. Supp. 320,

321, (E.D. Pa. 1994).   "Because federal courts have a strong interest in the finality of judgments,

motions for reconsideration should be granted sparingly."   Continental Cas. Corp. v. Diversified

Indus., Inc., 884 F. Supp 937, 943 (E.D. Pa. 1995).   A general dissatisfaction with the court's

ruling is not a valid ground for granting a motion for reconsideration.   See, e.g., U.S. v. Phillips,

2001 WL 527810, at *1 (E.D. Pa. May 17, 2001)(a difference of opinion with the court is not an

appropriate ground for granting reconsideration).

Defendants present no new, previously unavailable evidence, and assert no intervening change in the controlling law, and therefore this Court will proceed with its analysis under the third basis for reconsideration--the need to correct a clear error of law or to prevent a manifest injustice.   This inquiry necessarily encompasses a second investigation into the merits of the relevant pleadings: (i) Defendants' Motion for Summary Judgment (Document No. 17); and (ii) Plaintiff's Answer to the Motion (Document No. 18).

I.      **Factual Background**

The facts in the light most favorable to the non-moving party are as follows:   Gamal Johnson was convicted of a drug offense in Virginia and sentenced to three years probation. Based upon his favorable adjustment in Virginia (Defendant's Motion for Summary Judgment, Exhibit C), supervision was transferred to Pennsylvania and Johnson, pursuant to the terms of his probation, began reporting to Agent Miguel Torres at the Philadelphia Office of the Pennsylvania Board of Probation and Parole in June 2000.   (Johnson Dep. at 9:16, 15:12).   On September 6, 2000, Johnson was sitting in the waiting room at the Probation Office for a scheduled visit with Agent Torres, when he witnessed another parolee having what Johnson suspected was a seizure. (Id. at 24:1-24:18).   The parolee fell to the ground convulsing, hitting his head on the ground, foaming at the mouth, and rolling his eyes in the back of his head.   (Id. at 25:11-12, 26:11-12). Although Johnson had no prior medical training, he immediately attempted to assist the fallen parolee.   (Id at 25:2, 26:14-15).   Two other parolees also came to the fallen parolee's aid.   A third parolee yelled for someone to call "911."   (Id. at 26:16-19).

Simultaneously, as the fallen parolee laid on the floor, a Hispanic parolee who had been sitting in the waiting room was summoned into the interviewing area to meet with his parole

officer.  When the Hispanic parolee passed through the door from the waiting room to the

interviewing area, Agent Knorr overheard the Hispanic parolee tell his agent that there was

"[j]umping out there."  (Knorr Dep. at 6:3-14).  Agent Knorr promptly went to the waiting room

to investigate what the Hispanic parolee had reported.  (Id. at 6:15-18).

When Agent Knorr opened the door between the interviewing area and the waiting room,

he witnessed a parolee on the ground, bleeding from his head.  (Id. at 7:23-8:3). Agent Knorr

signaled to Tajmah McCall, the receptionist in the Probation Office, to call 911.  (Id. at 8:8-15).

Thereafter, Agent Knorr claims he was about to assist the fallen parolee.  (Id. at 8:16-22).

However, as Johnson was kneeling on the ground besides the fallen parolee, he looked up, and

Agents Knorr and Boccio were both standing in the doorway, doing nothing to assist the fallen

parolee.  (Johnson Dep. at 32:13-34:5).  As a result of the Agents' unresponsiveness, Johnson

asked the Agents, "Do any of you know anything?  Can you help this guy out?"  (Id. at 34:4-5).

Agent Knorr replied, "Who the f— are you?"   Thereafter, Agent Knorr walked over towards the

fallen parolee and said to Johnson, "Get the f— out of the way", (Id. at 36:16, 38:12-18;  Knorr

Dep. at 11:7-10), and pushed Johnson hard enough to knock him backwards.  (Johnson Dep.

38:19-23).  After Johnson stumbled backwards, he rose up towards Agent Knorr and said that he

"didn't have to talk to [him] like that."  (Id. at 39:6-10).  In response, Agent Knorr told Johnson

to "back off," reached across the fallen parolee, and pushed Johnson for a second time.  (Id. at

39:11-14; Knorr Dep. at 13:5-8).  Johnson then walked towards the center of the room and again

told Agent Knorr that he didn't have to put his hands on him.  (Johnson Dep. at 44:9-18).

Agent Knorr yelled at Johnson yet again, and Johnson advised the agent that "he didn't

have to talk to me like that and he definitely didn't have to put his hands on me."  (Id., at 44.)

Knorr then attempted to grab Johnson's arm, but Johnson "snatched" his arm away from Agent

Knorr's grasp.  (Id. at 44:19-20).  Knorr looked towards the receptionist window in an effort to

obtain assistance.  (Id. at 44).  Johnson, who was already thinking "that Officer Knorr has a

problem," (Id., at 39:20-21) told Knorr "not to put his hands on me again.  I told him he better

call some other people out of the back or something, but don't put your hands on me." (Id., at

44:15-24)

At this point, Johnson was standing upright, facing Agent Knorr.  Knorr instructed

Johnson to exit through the waiting room door, toward the interview rooms.  In the words of

Agent Knorr, "I told him you're going into that f----- room."  (Knorr Dep. at 18:5-6)  Johnson

advised that he would comply, and as he reached to open the door, Knorr "then pushed me into

door number three."(Johnson Dep. at 45:8-14).  As a result, the door slammed into Agent Jones,

who was on the opposite side of the door about to enter the waiting room.  (Id. at 45:11-46:22).

The door's force knocked Agent Jones backwards.  Johnson advised Knorr "don't touch me.

Don't push me."  (Id. at 47:1-3).  Knorr grabbed Johnson's arm and began to twist it behind

Johnson's back.   Johnson resisted by stiffening his arms.  Other agents assisted Knorr and, when

Johnson's initial arm was cuffed, he ceased resisting and permitted the agents to cuff his second

arm.  (Id. at 47-48)   Initally, when Johnson failed to place his arms behind his back so that he

might be cuffed, Knorr stated ". . . he was going to break my f----- arm."[1]  (Id. at 48:19-22).

---

[1]  Breslin v. Brainard, 2002 WL 31513425 (E.D.Pa., 2003) which involved allegations
that State Parole Agent David Knorr deprived one of his parolees of his federal civil rights in a
separate incident, is of interest on the underlying issue of the manner in which Agent Knorr
speaks to his probationers and parolees.  In that case, the plaintiff, who had been arrested and
placed in a holding cell by Agent Knorr, averred that shortly after his arrest,  Knorr arrived at the
cell and said, "You don't have a clue why I am arresting you...Because you are a f------ goon and
thug for Johnny Morris and you're a– is going to jail." (Id. at 4.)

Johnson "asked another officer to tell Agent Knorr to let go of me, because he was trying to hurt my arm." (Id. at 48:22-24)

Michael R. Barrone, Agent Knorr's immediate supervisor, testified that, after speaking with Agent Knorr immediately after the incident, it was his understanding that Johnson slammed the door shut, but Barrone " . . . didn't believe he [Johnson] tried to actively, you know – tried to assault anyone." (Barrone Dep. at 12-13).   Nevertheless, immediately after the incident Johnson was transported to the Central Detective Division to be processed for criminal charges.   Agent Knorr advised Philadelphia Police Detective Ronald Dove that he had been threatened and an assault had been committed upon Agent Jones.   Based solely upon Agent Knorr's description of the events, Detective Dove subsequently recommended the filing of charges against Johnson for simple assault, aggravated assault, terroristic threats, and reckless endangerment by the District Attorney.

Johnson claims that Agent Knorr fabricated material elements of the facts in an effort to substantiate criminal charges against Johnson and cause Johnson's arrest by the Philadelphia Police Department.  Furthermore, according to Plaintiff, Agent Jones admitted to Johnson that Agent Knorr was a "lying dog," and that Agent Jones knew Johnson was not responsible for slamming the door.  (Id. 64:16-65:4). Nevertheless, the DA filed the charges recommended by Detective Dove; they were subsequently dismissed at the preliminary hearing.  (Id. at 68:6-7).

The Plaintiff filed the instant action against the Defendants, asserting state and federal

claims[2], and the Defendants moved for summary judgment.  This Court denied the Defendants'

Motion for Summary Judgment, and the Defendants now seek a reconsideration of the denial.

## II.     Discussion

Summary judgment may be granted only "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."  Fed. R. Civ. P. 56(c).  Upon a motion for summary judgment, the non-moving party

"may not rest upon the mere allegations or denials of the adverse party's pleadings, but the

adverse party's response . . . must set forth specific facts showing that there is a genuine issue for

trial."  Fed. R. Civ. P. 56(e).  An issue is genuine if the evidence is such that a reasonable jury

could return a judgment in favor of the non-moving party.  Anderson v. Liberty Lobby Inc., 477

U.S. 242, 248, 106 S. Ct 2505, 2510, 91 L. Ed. 2d 202 (1986); Williams v. Borough of West

Chester, Pa., 891 F.2d 458, 459 (3d Cir. 1989).  Lastly, all facts must be viewed in the light most

favorable to the non-moving party, and all reasonable inferences should be drawn from the

evidence presented by the non-moving party.  Anderson, 477 U.S. at 255; Gass v. Virgin Islands

Telephone Corp., 311 F.3d 237, 240 (3d Cir. 2002).

### A.     Qualified Immunity

In Forbes v. Township of Lower Merion, 313 F.3d 144, 146 (3d Cir. 2002), the Third

Circuit outlined qualified immunity stating:

---

[2]Specifically, Plaintiff has made constitutional claims under 42 U.S.C. § 1983, and state
law claims for false arrest, false imprisonment, and assault and battery.

Qualified immunity insulates from civil liability government officials performing discretionary functions insofar as "their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987).  In assessing a claim of qualified immunity, we must review the law relevant to the official's behavior and ask whether the official could have believed that his or her actions were justified by law.  See Good v. Dauphin Cty. Sov. Sercs., 891 F.2d 1087, 1094 (3d Cir. 1989).  The second part of this inquiry contains two components.  To overcome the defense of qualified immunity, (1) the facts, "taken in the light most favorable to the party asserting the injury, [must] show the officer's conduct violated a constitutional right," Saucer v. Katz, 533 U.S.194,201 (2001), and (2) "the contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right."  Anderson, 483 U.S. at 640.

Qualified immunity is defeated if an official "knew or reasonably should have know that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury."  Wood v. Strickland, 420 U.S. 308, 322 (1975).  The doctrine aims to exclude the "plainly incompetent" and "those who knowingly violate the law" while accommodating reasonable "mistaken judgments." Hunter v. Bryant, 502 U.S. 223, 229 (1991) (citation and internal quotation marks omitted).  If an official could have reasonably believed that his or her actions were lawful, the official receives immunity even if in fact the actions were not lawful.

Qualified immunity is not a mere defense from liability, it is an entitlement to not to stand trial or face the other burdens of litigation.  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  The issue of qualified immunity should be resolved at the earliest possible stage in litigation.  See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

The Defendants' qualified immunity defense prompts this Court to make a two-part inquiry: (i) whether the Plaintiff has successfully alleged a deprivation of a constitutional right; and (ii) whether the deprived right was clearly established at the time of the suspect event. County of Sacramento v. Lewis, 523 U.S. 833, 842 n.5, 118 S. Ct. 1708, 1714 n.5, 140 L. Ed. 2d 1043 (1998); Schieber v. City of Philadelphia, 320 F.3d 409, 416 (3d Cir. 2003); Eddy v. Virgin Islands Water and Power Auth., 256 F.3d 204, 208 (3d Cir. 2001).  As a result, this Court must

first resolve whether the Plaintiff has alleged a deprivation of a constitutional right.  Only after affirmatively answering this initial inquiry is it necessary to consider whether the deprived right was clearly established at the time of the suspect event.  See, e.g., Siegert v. Gilley, 500 U.S. 226, 232, 111 S. Ct. 1789, 1793, 114 L. Ed. 2d 277 (1991)("A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is clearly established at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all.").  Therefore, this Court will consider whether Agents Knorr and/or Jones potentially violated any of Johnson's Constitutional rights.

### i.    Deprivation of a Constitutional Right

#### a.  Agent Knorr

The Fourth Amendment provides that all citizens are free from arrest without probable cause.  Saucier v. Katz, 533 U.S. 194, 207, 121 S. Ct. 2151, 2159, 150 L. Ed. 2d 272 (2001); Orsatti v. New Jersey State Police, 71 F.3d 480, 482 (3d Cir. 1995).  Probable cause exists when "the facts and circumstances within [the agents'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed."  Brinegar v. U.S., 338 U.S. 160, 175-176, 69 S. Ct. 1302, 1311, 93 L. Ed. 1879 (1949); see also U.S. v. Myers, 308 F.3d 251, 255 (3d Cir. 2002).

Plaintiff was arrested for the offenses of aggravated assault (18 P.S.A. § 2702), simple assault 18 P.S.A. § 2701), terroristic threats (18 P.S.A.§ 2705) and reckless endangerment of another person (18.P.S.A. § ).  Defendant limits his argument to the question of whether probable cause existed to arrest Plaintiff for the offense of terroristic threats.  The Pennsylvania

Crimes Code defines terroristic threats as follows:

§§ 2706. Terroristic threats

**(a) Offense defined.**--A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:

(1) commit any crime of violence with intent to terrorize another;

(2) cause evacuation of a building, place of assembly or facility of public transportation; or

(3) otherwise cause serious public inconvenience, or cause terror or serious public inconvenience with reckless disregard of the risk of causing such terror or inconvenience.

**(e) Definition.**--As used in this section, the term "communicates" means, conveys in person or by written or electronic means, including telephone, electronic mail, Internet, facsimile, telex and similar transmissions.

18 Pa.C.S.A. §§ 2706.

Agent Knorr had a sufficient basis for arresting the Plaintiff for the offense of terroristic threats.   Defendant Knorr contends that Johnson's physical posture, size and demeanor communicated a threat.  Defendant Knorr also contends that Johnson's statement "you need to call someone else out of the back" constituted an implied threat.  The fair meaning of the statement, as viewed in the context of the entire episode from the perspective of the Plaintiff, is that the Plaintiff viewed Knorr as an aggressive, unpredictable and out of control parole agent who had already cursed and pushed Johnson when Johnson was attempting to secure assistance for a parolee experiencing a seizure.  Johnson's request was for civil treatment  consistent with basic precepts of human decency.   See generally: Overton v. Bazzetta, 123 S. Ct. 2162, 2171 (2003) ( Stevens, J., concurring) ("To the contrary, it remains true that the 'restraints and the punishment which a criminal conviction entails do not place the citizen beyond the ethical

9

tradition that accords respect to the dignity and intrinsic worth of every individual.' "[citation omitted].

Plaintiff's statement is susceptible to several reasonable interpretations.   Agent Knorr walked into an understandably chaotic waiting room and, as a result of those circumstances, did not have the opportunity to process the situation consistent with the best principles of reflective deliberation.   He was unaware as to how the parolee came to be on the floor and attempted to take control of the tenuous situation.   An apparent parolee, the Plaintiff, challenged the agent's aggression, stating that he would not comply with the commands and further advised the agent of the need to summon other agents from the rear offices.   This Court finds that a reasonable parole officer, faced with the circumstances presented in the waiting room on September 6, 2000, could have reasonably believed that the Plaintiff committed the offense of terroristic threats.   The offense of terroristic threats does not require a direct verbal utterance.   The harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security.   Com. v. Felton, 750 A.2d 863 (Pa. Super 2000)   Under the circumstances presented, a reasonable parolee should have complied with the agent's directive to step away; the failure to do so, and the articulation of the need to summon other agents, created a reasonable apprehension that Johnson might cause physical harm to Agent Knorr; at the very least, Johnson invaded Knorr's sense of personal security.   Thus, sufficient probable cause was present to justify the arrest of Gamal Johnson for the offense of terroristic threats.

The inquiry, however, does not conclude at this juncture.   Law enforcement officials, who are entrusted with significant social responsibility, are expected to comport themselves in a manner consistent with the dictates of the law for the entire course of the performance of their

duties.  With respect to the later portion of the episode, the facts as alleged by Johnson, present

the deprivation of a constitutional right.  Johnson contends that Agent Knorr thrice pushed

Johnson, the last time into the door which struck Agent Jones.  Johnson denies pushing the door

into Agent Jones.  If pushed into the door, Johnson neither assaulted Agent Jones nor

demonstrated the necessary specific intent to commit the offenses of simple and aggravated

assault.  The truth of this dispute is not presented for the court's resolution at this juncture.  It is

sufficient that a fact finder, in evaluating the facts in the light most favorable to the non-moving

party, could plainly conclude that Agent Knorr violated Johnson's Fourth Amendment rights in

causing Johnson's arrest for causing, or attempting to cause, physical injury to Agent Jones.

Drawing all reasonable inferences from the evidence presented by the non-moving party, Johnson

has presented a sufficient factual basis on the limited question of whether Agent Knorr fabricated

the assault upon Parole Agent Jones.   Accordingly, this court finds Plaintiff has successfully

alleged a violation of his Fourth Amendment rights as to the latter portion of the waiting room

episode and for his arrest on the assault charges.

### b.  Agent Jones

Plaintiff implicitly acknowledges that Agent Jones is entitled to qualified immunity.

(Plaintiff's Memorandum of Law in Opposition to Defendant's Summary Judgment Motion, at

14- 15).  This Court finds that Agent Jones is entitled to the qualified immunity because, when

Agent Jones first encountered Johnson and Agent Knorr, the men were at an impasse.  A man of

reasonable caution, from Agent Jones's perspective, could have believed that an offense had been

or was being committed.  The record is silent as to whether Agent Jones observed the

occurrences in the waiting room prior to the opening of the door.   It does not speak to the issue

of whether Jones assented to, or even was aware of, the charges filed against Plaintiff Johnson.

The record only indicates that subsequently, when Jones became Johnson's parole officer, he reviewed the arrest paperwork and remarked that Knorr's averments were false.  The Plaintiff fails to concretely allege the specific manner in which Agent Jones violated his constitutional rights.  Moreover, this court cannot say that an objectively reasonable parole officer arriving in the middle of this unnecessary episode would not have concluded that Agent Knorr needed assistance in placing handcuffs on Johnson.

Therefore, this Court finds Agent Jones is entitled to a qualified immunity defense because: (a) Plaintiff does not oppose the defense; (b) evidence is lacking to support the contention that Agent Jones violated Plaintiff's rights; (c) the record is silent as to whether Agent Jones assented to, or participated in any manner, in the decision to charge Johnson with violations of the Pennsylvania Crimes Code; and (d) Agent Jones was objectively reasonable in concluding that Agent Knorr needed assistance.

### ii.      Clearly Established Right

The inquiry into Agent Knorr's culpability does not end with the determination that the Plaintiff has the successfully alleged the violation of a constitutional right.   A qualified immunity analysis also requires inquiry into the issue of whether the violated right was clearly established at the time in question.  Generally, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987); Estate of Smith v. Marasco, 318 F.3d 497, 510-11 (3d Cir. 2003).  Not all legal rights are clearly established, and a constitutional right is violated only when, in light of pre-existing law, the unlawfulness of the agent's actions is apparent.  Anderson, 483 U.S. at 640.  "The relevant,

12

dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Saucier</u>, 533 U.S. at 202. Qualified immunity is intended to protect "all but the plainly incompetent or those who knowingly violate the law." <u>Malley v. Briggs</u>, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986); <u>Orsatti</u>, 71 F.3d at 484.

Plaintiff's core allegation is that Agent Knorr knowingly and intentionally violated the law in attributing the act of pushing Johnson into the door (which struck Agent Jones) and causing Johnson's arrest for the offenses of simple and aggravated assault on fabricated probable cause. The concept that individuals entrusted with the responsibility to uphold the law and to supervise convicted offenders should not fabricate criminal offenses is fundamental our system of justice. No reasonably competent parole officer could have any confusion on this point. Under these circumstances, even if Agent Knorr was not knowingly violating the law, his conduct was nevertheless "plainly incompetent," and he would not be entitled to a qualified immunity defense. <u>Forbes v. Lower Marion</u>, 313 F.3d 144 (3d Cir. 2002) ("Qualified immunity is defeated if . . . an official took the action with the malicious intent to cause a deprivation of constitutional rights or other injury." <u>Id</u>. at 148).

**B.    Sovereign Immunity**

Johnson alleges Pennsylvania state law claims of false arrest, false imprisonment, and assault and battery against Agents Knorr and Jones. Pursuant to the Pennsylvania Constitution, Pennsylvania "officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. C.S.A. § 2310. Furthermore,

13

the Plaintiff's claims do not fall within any of the nine enumerated statutory exceptions to the sovereign immunity defense, 42 Pa. C.S.A § 8522(b), and therefore if the Agents acted within the scope of their duties as state law officials and employees, the Plaintiff's state law claims must be dismissed.  LaFrankie v. Miklich, 618 A.2d 1145, 1149 (Pa. Cmwlth. 1992).

Agent Jones's actions in assisting Agent Knorr during his standoff with Johnson were all done within the scope of his employment as an Agent for the Pennsylvania Board of Probation and Parole, and entitle Agent Jones to immunity against all Johnson's state law claims. However, the same cannot be said for Agent Knorr.  The Plaintiff concedes that Agent Knorr's actions during the initial altercation between Agent Knorr and Johnson all occurred within the scope of Agent Knorr employment, but Agent Knorr's conduct ceased to be within his scope of employment when, according to the facts alleged by the Plaintiff, Knorr pushed Plaintiff into the waiting room door and subsequently fabricated his rendition of the events to Detective Dove. The scope of a parole agent's employment should never require that the agent lie and fabricate a series of events, leading to the potentially unlawful arrest of a probationer.  Therefore, viewing the facts in the light most favorable to the non-moving party, Agent Knorr is not entitled to a sovereign immunity defense against Johnson's Pennsylvania state law claims.

## IV.    Conclusion

Based on the foregoing reasons, Defendants' Motion for Reconsideration is **GRANTED IN PART, AND DENIED IN PART.**  An appropriate order follows.

14

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GAMAL JOHNSON,                    :        CIVIL ACTION
    Plaintiff,                  :
                            :
    v.                          :        NO. 01-CV-3418
                            :
AGENT KNORR, et al.,              :
    Defendants.                 :

## ORDER

AND NOW, this       day of October, 2003, in accordance with Rule 58 of the Federal Rules of Civil Procedure, it is hereby **ORDERED** that the Defendants' Motion for Reconsideration is Granted in Part and Denied in Part:

1. Defendant Pennsylvania State Probation and Parole Agent Jones is entitled to qualified immunity and sovereign immunity.

2. Judgment is entered in favor of Agent Jones on all counts and against Plaintiff Gamal Johnson on all counts.

3. Defendant's Motion for Reconsideration is Granted with Respect to State Parole Agent Jones.

4. Defendant Pennsylvania State Probation and Parole Officer David Knorr is not entitled to either qualified immunity or sovereign immunity.

5. Defendant David Knorr's Motion for Reconsideration is Denied.

6. Defendant David Knorr's Motion for Summary Judgment remains denied.

BY THE COURT:


Legrome D. Davis, U.S.D.J.